Case No. 10-3804, Daryl Young-Gibson v. Board of Education This case is about whether the Chicago Board of Education has the authority to remove a principal from her principalship using the procedures in Section 34-8.3 of the Illinois School Code and not the procedures identified for removing a teacher, tenured teacher, or principal for cause under Section 34-85. Let me ask you, have there been other cases where principals have been removed under the statute? Of 8.3 and 8.3, yes. The Board of Education uses Section 8.3 almost every year, a couple times a year sometimes, sometimes not during a year. But these are all schools that are on probation? That's correct. 8.3, you're only under the auspices of 8.3 if your school is on probation. And it has to be for a number of consecutive years or was it just one year? This school was on probation since 2004, but according to the statute, you have to be on probation under the principal for a year. In terms of its impact on the principal and their future and their career, what's the difference? Well, under 34-85, the difference is if you're a tenured teacher or principal and you're dismissed for cause, the board puts an electronic do not hire on your file. Because if, for instance, in this case they terminated her, did they not? Right. She was removed. She was terminated October 2009, but she is eligible to apply for any position she is qualified for, such as special education teacher or a counselor. How long was the contract for? The contract was four years. Four years? Correct. Okay. Is the contract in the appendix? Yes, it is. I don't know if it's in the appendix. It is in the record. Well, yeah, I know I read it somewhere. I was just wondering. I asked you about other cases utilizing that Section 8-3. Correct. And you said there have been other cases. How did Judge Hyman explain his ruling that it could only go under four cause? I believe Judge Hyman did not appreciate the reason for 8.3Y came into being, that there was a massive restructuring. He said the two sections had to be read in conjunction. Right. He said it could not be independent. And he said that those sections together establish that once won, a principal may not be removed during his term except for cause. That's what he concluded. Right. He did. I also think he did not review Section or I did not draw his attention enough to Section 8.1 of the school code, which was also part of school reform, which specifically stated that your principalship can be ended prematurely pursuant to your contract. And in the contract, it says that she can be removed pursuant to 8.3 as well as 3485. And that's my other question. Okay. Did Judge Hyman believe that he was making a ruling, a first impression that he was deciding that these two sections had to be read together and that 34-85 had to be, had to control, had to trump? I don't see how he couldn't have thought that because we have been using 8.3, the board has been using 8.3. Well, the fact that you've been using it doesn't mean that it's properly used, does it? It simply means that you were getting away with it from the perspective of the principal anyway. You were just getting away with a shortcut version of removing a principal. But it's been reviewed before by a circuit court judge, hasn't it? Right. Judge Palmer reviewed the Hodges case, which then eventually was appealed to this court. She died. She died. What section in 8.1 talks about the removal that you're referring to? 8.1 is the title of principles. It's very long. Yes. I have it in front of me. 8.1 basically says that if you violate, if you breach your contract by, you can breach your contract. Well, it says, as provided for in the performance contract. What section are you? I'm in, it's 653. It's a very short paragraph that starts with during the term. On the left. What does it say now? During the term of his or her performance contract, a principal may be removed only as provided for in the performance contract except for cause. And the performance contract, and that was new, the performance contract allowed the board to terminate her contract for a number of reasons, independent reasons. I think it was B, was 3485 and subsection G of the contract section, or sorry, termination section, is the section that allows the board to remove her pursuant to 8.3 or 8.4. So she knew when she signed her contract that she was accepting this risk. She knew that the school was on probation. She didn't cause the school to be on probation, but you're under the auspices of 8.3. What was Judge Hyman referring to when he said he was going against some ruling of Judge Epstein? What was that all about? Judge Epstein had ruled on a motion to dismiss. Denied it. Correct. Yes. He denied the motion to dismiss. So he was saying if he was going against, if he ruled in favor of the school board, he would be going against the earlier ruling? Is that what he was saying? I believe that's what he believed. All right. But Judge Epstein did not rule on this case, other than the motion to dismiss, denied. Correct. All right. What about the argument that your opponent has made with respect to even if 8.3 applies, you didn't follow it? We did follow it, Your Honor. 8.3a requires the CEO to monitor the performance of all the schools in the district. He did that. It requires him to have a performance policy, a written performance policy. There is no guessing about why you become a probationary school. There's no guesswork involved. The policy is very clear, published, and known. Wasn't there a provision, though, that the principal would have at least a year to do this? That's correct. The board has to wait for a year before it would move under 8.3d for any of the actions the dramatic school activity. Well, did it or did it not? Yes, it did. Yes, it did. Proceed earlier than that. No. Dr. Young Gibson accepted and started her tenure as a principal January 2008. The CEO, the hearing was held August 24, 2009. She was removed October 2009. They make the point, too, don't they, that one of the things that she's accused of not doing was implementing a program that wasn't funded until 37 days after she took office. Right. The board, the CEO did not seek her removal for failure to implement the SIPA, which it could have done. 8.3 identifies several ways in which you become a probationary school. The educational board... You need to hire a lawyer if you're a principal in the city of Chicago, don't you? No, I don't believe that. Because otherwise the board can pretty much, as I think her argument is, is that basically you're using this whole procedure as a subtext, not to improve Julian High School, you're using it as a subtext to get rid of a principal who was at odds over policy matters with the Board of Education. I strongly disagree, Your Honor. I know you do. But that's their argument, and it seems to me that there's some substance to their argument when you read the fine print in their motion to dismiss. Your Honor, this principal did not evaluate one teacher in 15 months at that school. You cannot improve the academic community, the environment of a school, if you are not going to discover and root out unsatisfactory teachers. All right, but there again, the focus is on her, not on the school. The principal is responsible for teacher evaluations. Nobody else can do that at the school, Your Honor. So there are certain points that she's going to have to meet during that initial period in order to retain her position. If she doesn't meet those points, then the board looks closely at whether the school is making progress, and the school has, or the administration has to determine, or take action if it concludes that she hasn't. Right. The General Assembly gave the chief executive officer the authority to do that. And contracts exist just about every facet of our lives now, and maybe principals do need lawyers to look at the contract, but the contract is a contract, and it's binding on both parties, isn't it? Right. That's exactly right. The contract is a uniform contract. It's for all contract principals. What is the provision in the contract that told the principal that she could be dismissed or released? Under Section 5, contract termination, it starts out, this agreement may be terminated before the expiration of the term for any one of the following methods, and it lists A through G. B is removal for cause pursuant to 3045, and G is removal pursuant to 8.3 and 8.4 of the code. All right. Let me ask you this. In the remediation and probation of attendance centers provision of 8.3, where it talks about what the superintendent can do in terms of her schools, it says that they can order a new local school conference or council elections, removing and replacing the principal. And then there's this section, replacement of faculty members subject to the provisions of 24A5. I was looking at that. What does that permit? Even teachers, are they teachers like this principal hired for this particular probationary school? Or do you know what this section was meant to do, the one that involves faculty members as opposed to principals? I have not seen a hearing pursuant to D3 in my time at the board, but I know that 24A5 refers to unsatisfactory performance of teachers and the process that they have to receive before they are removed. But this is relating to probationary schools, and if you look at that section 24A5, it seems to be that there are certain procedures that can be used for teachers as well as principals. That three, it wouldn't, well, I'm just asking, you know, if there's some meaning to this section that has a, it seems that the principal's position here is that the other section trumps this 88.3. The 3045. And that's what the judge seemed to say, that they have to be read together, but this statute was created after that. Right. This statute came in in the late 80s, early 90s. Its title is Remediation and Probation of Attendance Centers. The focus of this statute is on the schools and on improving the students' opportunities. And that's part of your argument that if, because this 8.3 came into existence after 3485 was already in existence, there would be no need to have a provision for the removal of the principal if the only way to remove a principal is for cause. That's correct. We believe the General Assembly knew what it was doing, that it was part of a broad plan to restructure the schools and make it easier and require the CEO to respond to failing schools. Then why were there allocations of cost then in this? Your Honor, the board routinely gets questioned, why my school? Why me? At the relevant time period, there was 214 probationary schools. There aren't the resources or the money to do hearings for all 214 schools, nor should there be. That kind of evidence that was introduced explains why the CEO's decision was made, that this, we believe that this principal is not going to be able to lead the school off probation. No, but there were allegations of cost in this complaint. I believe the testimonial from her supervisor explains, puts in context why, yes, this school is on probation, but we have a lot of probationary schools, but we're moving here today to remove this principal because she has demonstrated through these actions, she's not focused on the action in progress. To some extent, the clause doesn't go to grounds for removal, it goes to grounds, or it goes to whether or not she's making any progress. And if she's putting up barriers, then she can't be making progress to improve the school to get it off probation. Correct, if the stakeholders are not working in concert, the kids are going to suffer. You'll need to wrap up, and you'll have time for rebuttal. You're all right, unless you have other questions, I'll reserve the remainder of my time for rebuttal. Good morning, may it please the court, counsel. I'm Leonard Litwin, I represent Dr. Young-Gibson, who is also seated at the counsel table. Mr. Litwin, let me ask you, let me bounce off one of Justice Cahill's points, I believe he's speaking based on your brief, and you indicate that Section 8.3 was not followed. And my question is, are you saying that it wasn't followed regarding the principal, or was it not followed, did it not apply because the school was not technically under the probationary provision that 8.3 falls under? Well, I think it wasn't followed in the sense that on February 25th of 2009, the Board of Education finally approved the funding that was necessary to implement the school improvement plan. That was 37 days before my client was removed to the board office. She was removed on April 3rd. But was that a basis for her removal? Well, Mr. Huberman's letter of July 20th, 2009 starts this whole thing off. And the first paragraph, and I realize I'm not supposed to read, but I have to do it, indicates, despite supports to you and the school, the school has failed to make adequate progress to address the deficiencies that have placed it on probation. That's what they say in paragraph 1. But then they go on to, in paragraph 2, in addition. So in other words, these are additional grounds. They talk about the conduct of the principal, the insubordination. Now, wasn't that at least indirectly impact on the probationary status of the school? I don't think so. You've got a principal who is allegedly not following orders from the board. That's the allegation. Well, one of the things that couldn't that even though it could also be grounds for a dismissal for cause under 3485, what they're basically arguing, it seems to me, is that that same behavior can be interpreted as behavior that's detrimental to getting the school off probation. But that's not the way the letter is written, number one. It says in addition. These other things have contributed to the problems we're having at Julie. And then when we get to the hearing, what evidence do they use? They obviously used a lot of evidence that basically impact her directly in terms of where she were being charged under 3485. These would be arguments they could make for discharge for cause. There's one thing dealing with insubordination that hasn't been dealt with but was referred to. And I think this makes it purely a 3485 case and not an 8.3 case. Let me ask you as long as we're on that. What is the basic due process difference in your mind between 3483 and 3485? I don't know that 8.3 talks about a procedure. In reading it, I didn't see one. The only procedure I saw was in 3485. There was a hearing. You have a hearing under 3485. The difference it seems to me, the basic difference is that under 3485, she gets to participate in who conducts the hearing. The hearing under 8.3 that they did was their own hearing officer. What do you mean their own hearing officer? He's allegedly an independent person. Allegedly. He's appointed by them. He's paid by them. He's been a hearing officer. Who would pay one of the arbitrators under 3485 once they struck the State Board of Education rather than either one of the parties? Okay. If you've got the party being Other than that, okay. I agree with your analysis that that's a main difference. Are there any other differences in terms of what takes place at the hearing in terms of due process rights of the principal? You know, we didn't have that hearing, and I haven't participated in any of those, but I would believe that But other than the hearing officer himself or herself, is there any real substantial difference between the two hearings? I think you're allowed to present testimony and evidence, and I don't believe But you didn't. Well, but I think it was more of an adversarial type of testimony with cross-examination and things of that nature, which didn't occur in this particular hearing. Could it have occurred in this particular hearing? She could have cross-examined all of the witnesses, could she not? She had an opportunity to present witnesses on her behalf, did she not? Well, presenting witnesses on your behalf and cross-examining those that are accusing you are two different things. I know, but did she have the opportunity to cross-examine? I don't believe she did. Because she was denied that opportunity? I don't believe that the way the hearing was run that she had that opportunity. You're not really raising that, are you? That's not really that this was denial of her right to a fair hearing, that's not really what we're Well, I think it is a denial of a right to a fair hearing when the decision maker, it's like talking to a wall, because he's being paid by one side. That's not in the briefs either, but let me ask you this. Are you saying, or do you for the dismissal of a principal without cause? I mean, are you saying that these two have to be read together and that there can be no procedure where an attempt can be made to remove a principal from a probationary school for something, well, other than the cause here, and that was not to be able to get the school on track? Well, I think you have to look at 3485. And 3485, I got to wait one second. We know what it says. The only difference is the rather elaborate procedure set out in 3485 for selecting the arbitrator or the hearing officer. Other than that, it seems to me the two hearings are pretty much the same. Other than the adversarial nature of the 3485 hearing as opposed to this one, was it adversarial? I don't believe that Stanley Hill, who represented her at the hearing, was allowed to question anyone. Was he prevented from questioning? I think the procedure was that the hearing officer asked all the questions. Can a principal be removed under 8.3 without cause? That's what I'm asking you. The entire contract that my client had talks about... Not your client. I'm talking in the general sense. Can a principal be removed for not being able to get that school on track that's already on probation? Do you believe that this legislation allows for that? If it's done right. You are agreeing that you don't believe it was done right? Correct. So it doesn't have to be for cause to remove a principal? Well, you have to comply with the contract. And the contract has seven grounds. But the method that you use to remove a principal... Let's go back to Justice McBride's question. Does 8.3 require removal for cause? I would say yes. And I say yes because the contract itself... You mean because of the contract in this case? The contract, all of the principal contracts incorporate... And this was a uniform principal performance contract. I thought it said that she could be discharged earlier than the end of the contract. And it gave a number of grounds. That is true. That is true. She can be discharged early. However, the law, the Illinois State School Code is incorporated into the contract. 3485 talks about removal for cause. And cause does include everything that is in her contract as grounds. But is that what you're asking for? You're asking for a hearing for cause and allow the evidence to go forward in the case to be able to cross-examine. And you want the hearing officer to make it... The hearing officer could determine in light of the evidence that there are grounds for removal for cause. You think that your client's interest would be served by having a decision made for removal for cause? I think that they didn't do it right. And they shouldn't get another opportunity to do it right. We have the authority to remand this if what Justice Garcia was saying is that if you're really looking for a cause hearing, we certainly have the authority to remand for that kind of a hearing. Not that I'm suggesting we would do that. But we have the authority to remand for a hearing to determine whether she should have been discharged for cause based upon the record in front of us. Certainly you have that ability. Your argument would be at the very minimum that with due process under 3485 she would be entitled to a totally new hearing. Correct. With a procedure set up for the selection of the hearing officer as provided for in 3485. Correct. You couldn't use this record and just transfer it over. Correct. But I think that that's really not what we're seeking. We're seeking to have her put back as the principal at Julian High School. And this was never done... You have to tell us, give us specific reasons you believe 8.3 was not followed in light of what occurred below. I don't think that she was given an opportunity to get the school off probation because the funding was not approved until 37 days before she was discharged. Do you think the school's, the progress that the school made or didn't make was turned on that funding? She can't implement the plan, the funding, the specific elements of that plan under her contract. And I think I cited that in my brief until the board approves it. And I know that the Board of Education tried to attach... Was that sort of argument presented at the hearing? At the hearing in front. The entire 3485... 8.3. And 8.3, all of that was presented. In fact, there was a motion to dismiss that her attorney was allowed to argue, which ultimately fell on deaf ears. And this same argument was made from the start. 37 days is not enough time to do anything. We, in a normal situation, would have had 35 days for a brief. But you heard counsel indicate that the ruling under 8.3 was not based on her failure to make advances in light of that late provision of funds. That, in fact, they're not relying on her performance regarding what she could have done had those funds been available to her earlier. They're not saying that anything that... Her removal is not in any way connected with the advances she could have done with those funds. I don't agree. I think that if you look at the hearing and you look at the entire hearing transcript, they went through everything from dealing with what I would think would be a I ask you again, if there were a legitimate 3483 hearing, not this case, but a legitimate 3483 hearing, you can anticipate one being held, can't you? What procedure are they going to use? Your argument would be that if there's a principal involved and it's going to possibly lead to the principal's removal, then they have to use 3485. That's basically what the trial just said. 8.3 can be grounds for the hearing that's done under 3485, but you've got to use the procedure under 3485 in order to get rid of the principal. Right, but it doesn't have to be for cause. Well, I think if you look at 3485, it's all cause, but you have to have grounds. What was the point of this legislation? Well, they amended both sections at the same time in 1995. Not just adding 8.3 and not doing anything. What would be the point of allowing this removal of a principal under this provision if it already existed and it did exist for cause under 85? What's the point of this? Well, I think that 8.3 may be a little bit more specific as to a ground that can be determined to be cause under 3485, but the procedure that's used has to be 3485. So it's not so much cause in the sense like insubordination, but cause in the sense that the principal doesn't have the ability to implement a program to get a school off of probation and get it on the right track. Assuming that sections A through C have been complied with before you get to section D. Let me ask you this regarding 8.3 proceeding. Obviously, it's quite a bit different than a proceeding under 3485. How did this proceeding below, how did the process that was followed get decided upon? How did the hearing officer get appointed? How did the absence of cross-examination get understood by the parties and the proceeding go the way it did without there being something to say that, in fact, that's the process that has to be followed? All I can tell you, since I wasn't obviously at the proceeding, is how did it start? It started with Mr. Huberman's letter of July 20th of 2009, indicating that he was going to have the hearing conducted before a hearing officer that he appointed. And then you get to the hearing and there's a motion to dismiss the hearing based on the fact that things were not done the proper way, and this hearing officer does the hearing the way he wants to do it, and he's employed by the board. Let me go to Justice McBride's point. The need for this additional section, would you admit that when a school is on probation and there's an urgency to make progress in improving that school, that you need a fairly streamlined process to make changes in that school's administration that maybe 3485 doesn't provide? Well, let's look at what happened here. I have to answer it that way. What happened here is that on April 3rd of 2009, what happened is Dr. Young Gibson was removed, in essence, as the principal. And how quickly did that occur? Was it 18 months or so? Well, I think the contract started sometime in 2007, if I'm not mistaken, or beginning of 2008, and whatever that time is on the calendar. But the point is they had the ability to take her out of that principalship, put her in the office, which they did, and then they start the discharge process. So they could do the discharge process under 3485. They already got her in the office there. But, you know, funds are limited, and to the extent that her contract required that she be paid means that the funds that would have to be paid to another principal might cause funds to be short somewhere else. And so at some point, that payment under the contract, if it's permissible under 8.3, has to end. Well, I think that's a little bit of speculation, perhaps, on your part. I think that may be permissible. Can we talk about standard of review for just a moment? Okay. Because there has to be one in every case, right? Right. Would you assume that it's de novo on this issue of whether or not 3485 or 348.3 applies? Probably. But I would tell you that the issue that I have is whether the court has jurisdiction to hear this appeal to begin with. And I realize I brought a motion. Well, that's certainly de novo. Well, you have to determine that. But they brought this as a review. No, I brought it under 307. That's not what I'm talking about. But if you want to argue your jurisdictional issue, go ahead. You have the right to do that, too. Well, I do wish to argue it. I think that there is no jurisdiction here because no injunction was ever issued. When they tell her to put her back to work, that's not an injunction? It's in 3485 that that's what happens if there's a finding for the principal. So that's not an injunction. That's just the relief that she's entitled to under 3485. But they weren't under 3485. The circuit court reversed the order removing her. Ordered her reinstated. And basically said the reason they were reinstating her is because 3485 was admittedly compliant. We don't look at this form, but what the actual substance of the order is. How would that ruling get reviewed in your assessment, in your opinion? What provision under the rules would we be able to review the circuit court's decision reinstating a principal? Well, the circuit court in this case entered 304A language. They filed their appeal using that language and voluntarily dismissed it. What does 304A language have? It simply allows for piecemeal appeal. But it doesn't give you the appeal right itself unless the underlying ruling does something of substance. There were two counts to this complaint. One was for, in essence, the writ of certiorari. And the other was for the breach of contract. Well, actually, the first count was in the form of an injunctive relief, wasn't it? Well, she wanted to go back to work. And that was allowed. That's what the court allowed. The court allowed that but didn't even address the second. So isn't that a part of the controversy that's been fully decided? I agree. And that's why 304A was properly used. So they could be here properly under 304A? They could, but they dismissed it. That's my point. And you're not aware of the authority that allows this court to examine whether there's jurisdiction under any of the rules? I understand. All right. But my position is that once they dismiss it. Right. I understand that part. Now, to answer my question with respect to our standard of review for Judge Hyman's decision that 3485 had to be read in paramateria with 34.3 and that she was entitled to a 3485 hearing. Well, I think that Judge Hyman has some discretion here. Oh, he does? He has some discretion to decide what statute to apply. No, I don't think he has discretion. How do we review his discretion? Do we pay any attention to what he said when it comes to statutory interpretation? No, because we're not reviewing his decision. I know. Of course not. But I was going to let him answer that question rather than you. I'm glad you answered it. All right. You'll need to wrap up. Okay. Well, I think our standard of review. I'm not sure whether he did. What is the standard of review? We're reviewing the decision of the court, not the circuit court. I think it's an abusive discretion standard. We're not reviewing the trial judge's ruling, are we? Clearly erroneous. Is it not clearly erroneous? That's for the Board of Education. Our review of their decision, which is what we're actually reviewing. We don't review the trial court's decision to reverse. We review the underlying order entered by the board. Which was applying a set of facts to statutes. Or do we? That's why I'm asking you that question, because this is not under the administrative law. This is a question of certiorari. So are we reviewing the circuit court or are we reviewing the board? I think you're reviewing the circuit court. Okay. I just wanted to see where you were. You need to address the issue of our standard of review, as I recall. You believe it's an abusive discretion? Yes. Okay. All right. You'll need to wrap up. Okay. Basically here, this is really a, I guess it's an amalgam fix. It's really a 3485 case because of all the stuff that they put in here that is the insubordination and all of the rest of the things that have really nothing to do with the school and the kids. It has to do with Dr. Young-Gibson. What they're doing is they're trying to use an easier review to get rid of somebody where they should be using the other standard. And based on everything that there is here, I would ask you to affirm what the circuit court did and put my client back to work. Okay. Thank you. Thank you. Ms. O'Keefe, can I ask you briefly about the standard of review issue? Yes, Your Honor. I believe it is de novo because you're interpreting the statutes. Okay. But are we reviewing the reversal by the trial court on the certiorari or are we reviewing the board? The board. Okay. Why wouldn't it be either clearly erroneous? Don't we have to get to the board decision through the circuit courts? Why wouldn't it be clearly erroneous? Doesn't the agency have some, don't we give them some deference for their interpretation of the statute? And weren't there facts here that were testified to and documents? So wasn't the agency actually applying the statute to a given set of facts? Yes, it was, Your Honor. But the appellate court, I believe you have the final say here on what the statute means. You didn't give us the standard of review. This is an administrative decision. I believe in the argument we did. Let me, let me. The statute under which you proceeded incorporates the provisions of the administrative review law, whether it's called a petition for certiorari or not. In fact, there's many cases that say that a petition for certiorari is governed by the administrative review law. But this statute specifically adopts it where it says at 85B that the provisions of the administrative review law and all amendments and modifications thereof shall apply to and govern all proceedings instituted for the judicial review by either the employee, teacher, or principal of final administration. Before you get there, let me ask you this question. If we really, if we only review the board's decision, does that mean that we can ignore Judge Hyman's decision and simply not address whether he was right or wrong on whether 8.3 is subsumed within 30485? And do you even want us to do that? Don't you want us to clear up the law and say what, whether or not a principal can be removed solely under 8.3? But we prefer you to do both. We believe that the record is And so in order to get to the board's decision, we'd first have to review Judge Hyman's decision to decide whether or not he was right. We do. Don't we? No. Don't you want us to? Don't you want us to? Why don't we? However, you addressed the standard of review in your briefs. Yes, I believe we did. Where? Where in your brief did you address the standard of review? It's not so much the standard of review. It's 29. It's not so much the standard of review. It's the review of what question is really before us. Is it the question that Judge Hyman decided, reinstating the principal, or is it the question whether or not the board was right to remove her in the first instance under 8.3? And if we're only going to go to that second question, that first question might be ignored entirely. But it seems to me that it might benefit all parties if we address Judge Hyman's analysis as well. I believe you should address both. I believe the record definitely establishes the decision. Are there two different standards of review, though? Is there a Judge Hyman decision under a de novo review because he interpreted the statutes, and then there's the boards under the clearly erroneous, as Justice McBride pointed out, because that's an administrative decision. Right. When you're interpreting the statute, it's de novo. So when you're looking at 34.8.3 compared to 34.85, it's de novo. When you're looking at whether the decision by the board to terminate this woman's contract was against the manifest way of the evidence, that is. Where did you address the standard of review in your brief? I believe on page 29. Page 29 of your brief? Right. I cited in the state of Ellis, this court applies a de novo standard on matters of statutory interpretation. So what question is that, though? That's the interpreting. That's Judge Hyman's decision.  34.85 versus 8.3. But it doesn't go to the board. Right. The manifest way, that's the third issue presented that the record supported the decision made by the public agency. I wonder if I could ask both parties. I would like both parties to address the issue of the standard of review specifically. Go ahead. In a short post-oral argument memo. Okay. I'll do that. Simultaneously filed, five-page limit. Five-page limit simultaneously filed. You have two weeks. Not enough time. The standard of review and what we are reviewing. And, of course, the Supreme Court has already said that the standard of review differs based on the issue that the court is addressing. So if the issue is different that you're asking us to resolve, then there may be a different standard of review that applies. All right. I'll do that. All right. Justice McBride, you raised a question earlier on 8.3D3, the replacement of faculty members. And I have an opportunity to review that. And if you look at the section that it indicates you should follow if you're going to remove faculty members, it refers to the tenure of teachers remediation process. Principals don't get remediation. So that subsection does not apply to principals. So I believe that supports, further supports our argument that 8.3D2, which allows the CEO through the board to remove and replace a principal, is not subjected to the procedures in 3485. If the legislator wanted us to do that, they could have inserted that phrase. Where did the procedure that was followed down below, where did that arise? Where did that come from? We know where the procedures for removal for cause is spelled out in 3485. It talks about arbitrators set by the Board of Education, the state board. But how did the procedure below arise? So in 8.3C, sorry, 8.3D, it indicates that the CEO can recommend the removal to the board after a hearing. So she needs to have a notice and an opportunity for a hearing. And if you look at the performance policy, it indicates that the CEO does select the independent hearing officer and they do pay for the independent hearing officer. He is not or she is not an employee of the Board of Education and all the recommendations are not approved by the Board of Education. They were in this case. This case, definitely. It was. If you look at the hearing officer's decision, it was very well thought out. I think it was 86 pages. He made 27 factual findings. That's correct. But he was not the hired gun. He would choose to disagree with you about whether it was well thought out. Right. He heard the testimony. She was given an opportunity to testify and to present all the witnesses and documents that she wanted to have heard. She did not cross. She was not able to cross witnesses. I did want to answer that. So there was a bar. It was not adversarial like 3485. There's no question. It's a different process and I think that's intentional on the part of the legislator. But she was allowed to present any evidence that she wanted to, including her own testimony. That's correct. She testified and she called five witnesses, introduced 900 documents, and was given 24 hours after the close of the hearing to add additional, which she did in the form of statements and documents responding to the witnesses that testified on behalf of the Board. Don't forget about the standard of review. I won't. The SIPA was funded, Your Honor. It was. The schools don't open if the SIPA is not funded. Teachers don't work for free. So that budget was passed in the summer of 2008 and the SIPA was in effect as soon as the budget passed. Just so it's clear, we're not going to enter an order. We're going to rely on the acknowledgement by each side that they will submit that memorandum. Okay? That's right. All right. Thank you. Okay. Courts, take a brief recess.